IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

A. DAVIES,

    Plaintiff,                      No. CIV S-03-0014 LKK JFM P

   vs.

Dr. K. LOW,

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff is a state prison inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs by failing to provide him an adequate diet in light of his alleged allergies to eggs and tomatoes.[1]

       Defendants seek summary judgment on the grounds that plaintiff has failed to establish a violation of the Eighth Amendment.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

       Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] By order filed March 30, 2005, plaintiff's claim that defendant was deliberately indifferent for failing to provide plaintiff latex gloves for eczema was dismissed.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
2  1436 (9th Cir. 1987).
3        In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
6  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
8  genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
9  committee's note on 1963 amendments).
10       In resolving the summary judgment motion, the court examines the pleadings,
11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12 any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
22       On January 9, 2004, the court advised plaintiff of the requirements for opposing a
23 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
24 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.
25 Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).
26 /////

## ANALYSIS

I. <u>Facts</u>[2]

Plaintiff is committed to the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff was first housed at Deuel Vocational Institute for four months, then transferred to Salinas Valley State Prison (SVSP), where he remained from May of 1996 through January of 1998. Plaintiff was transferred to California State Prison Solano (Solano) on January 23, 1998, where he remained through April 23, 2003.

Defendant Low was employed as a physician and surgeon at Solano from July 1, 1998 through July 30, 2002. Dr. Low was the Acting Chief Medical Officer at Solano from November 1, 2001 through July 30, 2002, before transferring to the California Medical Facility in August of 2002.

In February of 2002, defendant Low denied plaintiff's treating physician's medical recommendation for an extra milk and extra sack lunch daily.

All California prisons serve the "master prison menu," which is a standardized heart healthy menu designed to meet the nutritional needs of normal, healthy adults. The master prison menu is composed by the Standard Menu Review Team (SMRT), with oversight and input of the Departmental Food Administrator.

The 2002 master prison menu contained 3,000 calories per day, 102 grams of fat (30% of calories), 95 grams of protein (13% of calories) and 439 grams of carboyhdrates (57% of calories) per day, based on a weekly average.[3] The prison master menu contains approximately 400 more calories per day than the minimum amount required by the average, moderately active

---

[2] Except as otherwise noted, these facts are not in dispute.

[3] Plaintiff attempts to dispute this fact by claiming that the total nutritional values identified are in conflict with those contained in the "nutritional reference" entitled: "The Wellness Encyclopedia of Food and Nutrition," produced by the University of California at Berkeley. However, plaintiff provides no evidence to support this statement, such as a declaration by the author, etc. Moreover, plaintiff does not specifically dispute that the prison menu provides the nutritional values set forth.

adult to maintain adequate nutrition. The prison master menu was specifically created to exceed the normal amount of calories required so that inmates may discard food they dislike, or food that does not agree with them, and still receive an adequate amount of nutrition per day.

The products containing eggs and tomatoes or tomato-based products served at Solano State Prison during the week of April 15, 2002 through April 21, 2002 were: (1) chili macaroni; (2) 2 boiled eggs; (3) beef vegetable stew, 6 oz.; (4) scrambled egg; (5) 1 boiled egg; (6) tomatoes in the salad; (8) tomatoes in the salad; (8) Spanish rice, 4 oz.; (9) beef enchilada, 2 each; (10) scrambled eggs, 3 oz.; and (11) tomatoes in the salad.[4] Excluding the items previously listed, the average number of calories provided for the week of April 15, 2002 through April 21, 2002 served at Solano State Prison was 2,696. Again excluding those items for that same time period, the menu contained an average of 86 grams of protein, and 400 grams of carbohydrates. Even without the egg and tomato based items served at Solano State Prison during the relevant timeframe of April 2002, the menu was nutritionally adequate for a moderately active male.[5]

In his deposition, plaintiff admitted he eats cake, breaded fish, pancakes, toast, biscuit and noodles, all of which contain eggs, and ketchup, which contains tomatoes. (Pl.'s Dep. Tr. at 24, 27 & 29.) Plaintiff does not eat all of a biscuit because a full serving has too many carbohydrates. (Pl.'s Dep. Tr. at 29.) Plaintiff discards sauces because he doesn't like sauces. (Pl.'s Dep. Tr. at 18.) Plaintiff discards chip beef because he dislikes the taste. (Pl.'s Dep. Tr. at 18.) Plaintiff discards pre-packaged lunch meats served with sandwiches for lunch because he finds they "have a distasteful taste and offensive smell." (Pl.'s Dep. Tr. at 18.)

---

[4] Plaintiff attempts to dispute this menu by claiming that "other foods containing eggs/tomatoes/peppers were substituted for menu items and actually served that week." However, plaintiff does not specifically identify what those foods were, nor does he demonstrate that the remaining choices failed to provide him adequate caloric nutrition.

[5] Plaintiff again attempts to challenge these nutritional values by citing "The Wellness Encyclopedia of Food and Nutrition." (See n.3, *infra*.) However, defendant has provided a declaration of a Registered Dietician who provided the nutritional values set forth above. (Deft.'s Mot., Ex. A.)

1  Plaintiff does not eat macaroni and cheese because it causes him gas and is too high in
2  cholesterol. (Pl.'s Dep. Tr. at 24-25.) Plaintiff will not eat margarine because it is too high in
3  cholesterol. (Pl.'s Dep. Tr. at 26.) Plaintiff does not drink all of his apple juice because he
4  thinks it contains too much sugar. (Pl.'s Dep. Tr. at 27.) Plaintiff does not eat all of a potato
5  because it is too high in carbohydrates and he does not like the taste. (Pl.'s Dep. Tr. at 32.)
6  Plaintiff eats about one-third of a potato. (Pl.'s Dep. Tr. at 22.) Plaintiff does not eat all the
7  serving of peanut butter because it causes him constipation. (Pl.'s Dep. Tr. at 28.) Plaintiff does
8  not eat all his noodles because a full serving contains too many carbohydrates. (Pl.'s Dep. Tr. at
9  29.)[6]

   During plaintiff's incarceration, no medical doctor has substantiated plaintiff's
   claimed food allergies.[7]

   Doctors and nurses frequently write a patient's subjective complaint of medical
problems under the letter "S," which stands for "subjective." The doctor will then note objective
observations after the letter "O," which stands for "objective." Normally, patients simply report
their allergies to the nurse or doctor and the nurse or doctor writes down what the patient says.
The "allergies" line on Physician's Orders form is the space where doctors or nurses are required
to write down whether the patient is allergic to any medications. This helps prevent doctors from
prescribing medications that are contraindicated to the patient. However, some health care
professionals also note other allergies in this section, for example, food or soap allergies.
/////

---

[6] Although plaintiff claims that certain statements attributed to him during his deposition are "unsupported by the evidence defendant cites," copies of the deposition transcript confirm plaintiff made these statements. Plaintiff's sworn testimony at a deposition is admissible evidence.

[7] Plaintiff attempts to dispute this statement by reciting medical records where plaintiff reports allergies or certain symptoms are described that plaintiff contends support his belief that he is allergic to eggs or tomatoes. (See Pl.'s Decl. at ¶¶ 7 &8.) But plaintiff has not provided results from allergy tests performed by prison doctors confirming plaintiff is allergic to eggs or tomatoes.

1    Plaintiff's medical records note "KNDA" (no known drug allergies), "NKA" (no
2 known allergies), and "eggs, strawberries and tomatoes." (Deft.'s Mot., Ex. D, at AGO012,
3 AGO017, AGO021.) One medical record states "KNA," but the "KNA" is crossed out and
4 "allergies 'tomatoes' 'eggs,'" putting the words tomatoes and eggs in quotation marks. (Deft.'s
5 Mot., Ex. D, at AGO036.)

6    On May 19, 1994 in plaintiff's medical record, medical personnel noted:

7    S) Wants anti histamines for skin burns and nervousness. States
     allergic to tomatoes and 1 week ago had salad with juice from
8    tomatoes on it. States reaction keeps "building up." O) No skin
     rash or evidence of scratching. No skin "bumps" seen.
9

10 (Deft.'s Mot., Ex. D, at AGO002.)

11    Plaintiff's August 12, 1994 medical record states:

12    S) Wants to know if going out for optho appt. Wants special diet-
      allergic to eggs and tomatoes. . . . P) Pt. advised that optho appt.
13    was denied. Also advised that no special diet available for these
      allergies.
14

15 (Deft.'s Mot., Ex. D, at AGO003.)

16    When plaintiff transferred to Solano in January of 1998, he reported a history of
17 eczema, weight loss and food allergies. (Deft.'s Mot., Ex. D, AGO013.) Plaintiff was scheduled
18 for weekly weight checks on January 28, 1998, reported as follows:

19       Date              Weight
         January 27, 1998   148 pounds
20       February 3, 1998   147 pounds
         February 10, 1998  146 pounds
21       March 2, 1998      148 pounds
         March 10, 1998     149 pounds
22       March 17, 1998     153 pounds

23 (Deft.'s Mot., Ex. D, AGO014.)

24    On February 17, 1998, medical records noted: "I/M here complaint of continual
25 weight loss-weight today 145.5 lbs. Note weight on 1-27 was 148 lb. appetite good, no N/V,
26 diarrhea. . . ." (Deft.'s Mot., Ex. D, AGO015.) In the margin is written: "Allergic to lots of

7

1  foods and not eating all that was given to him." (Id.)  Medical staff ordered an extra carton of
2  milk daily for 60 days.  (Id.)

3          In May of 1998, plaintiff complained he had a swollen throat when eating food
4  and felt this way for the past three days.  The medical records reflect:  "no redness swelling
5  noted.  Neck soft and supple."  (Deft.'s Mot., Ex. D, at AGO016.)

6          On July 31, 1998, plaintiff's medical record states:  "BP 110/70 T. 98.3 P60 R 16.
7  Requests refill aquacare skin lotion, MVI.  Complaint of itching to arms, underarms, buttocks."
8  Under observation the staff person wrote:  "mild (almost gone) rash (five papules) on arms and
9  buttocks.  Analysis:  allergic reaction."  (Deft.'s Mot., Ex. D, at AGO0041.)

10          Physician's orders dated July 31, 1998 show plaintiff was issued an activity card
11  for an extra milk daily for 90 days.  (Deft.'s Mot., Ex. D, AGO0018.)

12          On August 24, 1998, plaintiff presented at the primary clinic with complaints of
13  swollen, painful joints.  The medical record states:  "Patient states he is allergic to tomato, eggs
14  and strawberries which give inmate hives (see allergic reaction 7-31-98 which inmate now states
15  was related to what he ate).  Inmate requests meat free diet as this is best way to avoid tomatoes,
16  ie. meat lasagne, etc. . . ."  Medical staff ordered plaintiff to receive a meat free diet.  (Deft.'s
17  Mot., Ex. D, at AGO019.)

18          Plaintiff was again seen at the prison clinic on July 9, 1999, and the health care
19  provider wrote:  "(3) Requests ↑lunch as prior given by Dr. Scotti (1-21-94) d/& food allergies
20  →↑food he can eat →↑wgt. PE) No skin condition observed requiring lotion.  Pt. (patient) shows
21  area = nl (normal).  Wgt 149, Hgt 5'8" (med. frame 138-152) . . . {will refill x 30 days subject to
22  MAR review."  (Deft.'s Mot., Ex. D, AGO024.)

23          Plaintiff has not been diagnosed with diabetes.  (Pl.'s Dep. Tr. at 27.)

24          On October 9, 1998, medical records noted plaintiff's blood pressure was 106/70
25  and his weight was 147 pounds:

26          This patient is obsessing about his weight and his blood pressure.
        In neither of these areas of his life or concern can I help him and

        nor can I convince him that his blood pressure and weight are OK
and that he would be better to avoid obsessing about these areas of
his life.  I reluctantly refill the extra carton of milk and multi-
Vitamin.

(Deft.'s Mot., Ex. D, at AGO020.)

        On February 4, 2002, plaintiff weighed 151 pounds.  (Deft.'s Mot., Ex. D, AGO029.)

        In February of 2002, Dr. Low reviewed the recommendation made by plaintiff's treating physician that plaintiff should receive an extra sack lunch and milk daily.  (Deft.'s Mot., Ex. B, at 3.)  Dr. Low reviewed plaintiff's medical records to determine why the recommendation was made and whether the recommendation was necessary.  (Id. at 3-4.)  Dr. Low ascertained that the recommendation appeared to have been made because plaintiff was losing weight and noted that plaintiff had complained of food allergies to eggs and tomatoes.  (Id. at 4.)  Dr. Low opined that if a patient experienced substantial weight loss, a doctor would not treat the patient by providing additional food, but would evaluate the patient to determine the cause of the weight loss.  (Id.)  Dr. Low opined that once the underlying cause of the weight loss was diagnosed and treated, nutritional supplements could be provided to the patient as needed.  (Id.)

        Dr. Low noted that plaintiff had received a complete evaluation for malnutrition when he complained of weight loss at SVSP in 1998, and that blood work showed no evidence of malnutrition.[8]  (Id.)  Dr. Low checked plaintiff's albumin and cholesterol levels, which would indicate malnutrition, and both levels were normal or in the higher end of normal, indicating plaintiff was not malnourished.  (Id.)  Plaintiff had been checked for other serious medical conditions that might cause weight loss, such as HIV, diabetes and tuberculosis, and these tests

---

[8] Plaintiff disputes this statement by stating "Defendant Low is incompetent to make that assessment," and challenges other statements included in Dr. Low's declaration by stating "unsupported since defendant Low disregarded objective medical information contained in the plaintiff's medical file." (Pl.'s Stmt. of Disputed Facts at 3.) However, plaintiff provides no specific evidence to support his claim that Dr. Low is incompetent or to refute Dr. Low's ability to form a reasoned, professional judgment based on a review of plaintiff's medical records.

returned negative for illness. (Id.) Dr. Low checked plaintiff's thyroid tests, which showed plaintiff had no thyroid malfunction. (Id.)

Dr. Low opined that, based on Dr. Low's training and experience as a medical doctor, and the objective evidence in plaintiff's medical file, plaintiff did not require additional food to maintain good health. (Id. at 4-5.)

Defendant Dr. Low's refusal to authorize the medical recommendation for extra milk and sack lunch daily was entered on February 15, 2002. (Deft.'s Mot., Ex. D at AGO029.)

On March 6, 2002, plaintiff weighed 151.5 pounds. (Deft.'s Mot., Ex. D at AGO032.)

On April 30, 2002, plaintiff requested an extra sack lunch from a Dr. Obedoza, who informed plaintiff that his request was denied. (Deft.'s Mot., Ex. D at AGO032.)

Plaintiff's weight on June 3, 2002 was 151 pounds. (Deft.'s Mot., Ex. D at AGO033.)

On March 30, 2004, plaintiff weighed 152 pounds. (Deft.'s Mot., Ex. D at AGO039.)

Since the filing of plaintiff's complaint herein, plaintiff has received a nutrition consultation. On March 30, 2004, plaintiff met with a nutritionist at California Men's Colony. (Deft.'s Mot., Ex. D, at AGO037.) The nutritionist noted that for plaintiff's small to medium frame and height, his ideal body weight is between 145-156 pounds. (Id.) Plaintiff told the nutritionist that his allergies were confirmed in a test where they "poked him with needles on his back." (Id.) The nutritionist wrote "dx-food allergies." (Id.) The nutritionist concluded that plaintiff was "100% ideal body weight." (Id.)

Under the assessment portion, the nutritionist wrote:

> wt. appears to have been stable for some time but i/m reports
> received an extra sack lunch and extra milk at previous prisons.
> New to CMC 2/26/04. Debatable need for supplementation but am
> inclined to recommend continuation with monitoring of wts. P:

/////

> Goal: maintain wt. w/in IBW range. Recommend continue supplement as ordered and to d/c (discontinue) if exceeds IBW.

(Deft.'s Mot., Ex. D, at AGO037.)

## II. Plaintiff's Eighth Amendment Claims

In order to prevail on his Eighth Amendment claim plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. Deliberate indifference specifically to medical needs "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Randall v. Wyrick,

11

642 F.2d 304, 308 (8th Cir.1981); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir.1970). Rather, the plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.), cert. denied, 519 U.S. 1029 (1996).

In the instant action, it is undisputed that plaintiff's weight remained within normal limits, between 145-156 pounds, from February 15, 2002 to March 1, 2004. It is undisputed that plaintiff's need for additional supplemental nutrition was "debatable." The nutritionist at California Men's Colony wrote plaintiff's need for supplementation was debatable. The doctor who treated plaintiff on October 9, 1998, commented that plaintiff was obsessing over his weight unnecessarily. While plaintiff believes he requires food supplementation, there is a difference of opinion concerning this need well documented in plaintiff's medical file.

Although it appears plaintiff believes he has food allergies to tomatoes and eggs, his deposition testimony reveals he eats food despite the fact the food item contains these items as well as discards other healthy options either because he dislikes their taste or believes they are too high in cholesterol. Moreover, as Dr. Low opined,

> If a patient suffered an allergic reaction, I would expect to see a pattern of frequent trips to the emergency room for hives and swollen airways. I would expect this pattern to be repeated each time the patient came into contact with the allergies. Instead, I noticed [plaintiff] made subjective complaints of rashes and itching but medical practitioners were either unable to objectively confirm these symptoms, or else were unable to correlate [plaintiff's] mild symptoms to any food intake. My review of the objective observations of the physicians who treated [plaintiff] did not indicate symptoms of an allergic reaction to any food. Based on these records, I concluded [plaintiff] did not have food allergies.

(Deft.'s Mot., Ex. B, at 4.) A review of the medical records provided herein supports Dr. Low's opinion. Thus, Dr. Low is entitled to summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's November 18, 2005 motion for summary judgment be granted.

/////

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen**
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
6  failure to file objections within the specified time may waive the right to appeal the District
7  Court's order.  Martinez v. Ylst, 95 1 F.2d 1153 (9th Cir. 1991).
8  DATED:  August 28, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

/001; davi0014.msj